IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA ANDERSON, | ) | Case No. 1:24-cv-00383 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

**I.    Introduction**

Plaintiff, Lisa Anderson ("Anderson"), seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Anderson's applications for DIB and SSI be affirmed.

**II.    Procedural History**

Anderson filed for DIB on April 21, 2021, alleging a disability onset date of January 1, 2020 and for SSI on May 3, 2021, alleging a disability onset date of August 10, 2006.[1] (Tr. 205,

---

[1] The ALJ considered both claims using the January 1, 2020 onset date. (Tr. 21).

213). The claims were denied initially and on reconsideration. (Tr. 113-22, 124-31). She then requested a hearing before an ALJ. (Tr. 132-33). Anderson (represented by counsel) and a vocational expert ("VE") testified before the ALJ on December 22, 2022. (Tr. 40-62). On April 5, 2023, the ALJ issued a written decision finding Anderson not disabled. (Tr. 15-39). The Appeals Council denied his request for review on January 10, 2024, making the hearing decision the final decision of the Commissioner. (Tr. 1-3; see 20 C.F.R. §§ 404.955, 404.981). Anderson timely filed this action on March 1, 2024. (ECF Doc. 1).

### III. Evidence[2]

#### A. Personal, Educational, and Vocational Evidence

Anderson was 46 years old on the alleged onset date, making her a younger individual according to Agency regulations. (*See* Tr. 33). She graduated high school. (*See id.*). In the past, she worked as a cashier II. (*Id.*).

#### B. Relevant Medical Evidence

In her disability report completed on May 3, 2021, Anderson reported an inability to work due to a back injury and memory loss. (Tr. 242, 247). She consistently reported this issue in her physical therapy appointments with Cody Blood, PT, DPT. (*See, e.g.*, Tr. 666 ("Fell at work, leading head trauma and caused injury to low back. Memory issues from head trauma."); 667 (same); 893 (same); 894 (same); 896 (same)). Similarly, when she underwent a physical disability examination with Kevin Bailey, D.O., on October 2, 2021, Anderson reported memory

---

[2] Anderson only raises error with respect to the ALJ's evaluation of her memory loss. (*See* ECF Doc. 8). I therefore limit the review of the medical record only to the evidence relevant to those claims. Any arguments concerning her other physical or mental impairments are deemed waived. *See Kuhn v. Washtenaw Cnty.,* 709 F.3d 612, 624 (6th Cir. 2013).

2

issues and stated she had injured herself 15 years earlier, that she hit her head from the injury, and that she did not remember one year around the injury. (Tr. 696).

On November 30, 2022, Anderson established care with psychiatrist Samar Said El-Sayegh, M.D., to treat her depression, night terrors, anxiety, and PTSD. (Tr. 819-24; duplicate at 1203-08). She reported to Dr. El-Sayegh that she had a brain injury years ago and poor memory. (Tr. 820). She stated that in 2006 she was at work training people when she fell on concrete and lost consciousness. (*Id.*). Although Dr. El-Sayegh included head trauma and memory loss in his review (Tr. 822), he did not include it in his assessment and diagnoses of Anderson's condition (Tr. 823).

### C.     Medical Opinion Evidence

On February 2, 2022, Anderson underwent a psychological evaluation with J. Joseph Konieczny, Ph.D. (Tr. 707-14). She reported having "problems remembering things." (Tr. 708). She also reported suffering a work-related injury in 2005 where she suffered a traumatic brain injury ("TBI") and was knocked unconscious for a period of time. (Tr. 708). Dr. Konieczny noted Anderson reported significant memory issues since this episode. (*Id.*). Dr. Konieczny administered the Wechsler Intelligence Scale IV and indicated that "although there is no psychometric data regarding premorbid levels of functioning . . . she has suffered from some mild to moderate verbal intellectual decline that may be a residual effect of this history." (Tr. 711). He also administered the Wechsler Memory Scale IV; results indicated that Anderson's memory capabilities were within the extremely low level up to the borderline level. (Tr. 711). Anderson showed "very significant memory deficits in the specific index areas of visual memory, immediate memory, and delayed memory[.]" (*Id.*). According to Dr. Konieczny, these scores were significantly lower than expected, given the WAIS-IV results. (Tr. 711-12). He

3

indicated that "she has suffered from fairly significant and global memory decline that is likely a residual effect of her traumatic brain injury she suffered from a work accident in 2005." (Tr. 712).

Dr. Konieczny assessed Anderson with Major Neurocognitive Disorder; in his opinion, this was due to her history of TBI, without behavioral impairment, mild. (*Id.*). He further opined she "would have periodic difficulties in maintaining focus and persistence on even simple multi-step tasks," "diminished tolerance for frustration and diminished coping skills which would impact her ability to respond to typical supervision and interpersonal situations . . . [and] which would impact her ability to respond to typical pressure situations in the work setting." (*Id.*).

On February 8, 2022, at the initial level, state agency reviewer David Dietz, Ph.D., opined that Anderson had understanding and memory limitations and appeared capable of completing one- to two-step tasks in an environment where production standards are flexible, was capable of interacting in superficial social situations, and capable of functioning in an environment where day to day job duties are relatively consistent and major changes can be explained in advance. (Tr. 69-70; 79-80). On May 1, 2022, at the reconsideration level, state agency reviewer Karla Delcour, Ph.D., affirmed Dr. Dietz's opinion. (Tr. 89-90; 99-100).

D.     **Administrative Hearing Evidence**

On December 22, 2022, Anderson testified at a hearing before the ALJ. (Tr. 40). She stated that she lives with her husband and her mother, she does not have a driver's license, and she completed high school. (Tr. 44). She has difficulty completing household chores such as dishes because her "left hand doesn't work right" and she must "do everything right-handed." (*Id.*). She does not do too much during the day due to back pain causing her to sit and stand often. (*Id.*). She must use a scooter when out in public because her knees buckle, and she will fall

4

after a certain amount of time walking. (Tr. 45). She cannot do laundry and needs help from her mother while dressing or cooking meals. (*Id.*). Bathing affects her lungs, and she has trouble breathing. (*Id.*). She gets stuck in the bathtub at times. (*Id.*).

Her past work included part-time work as a cashier, about 20 hours per week. (Tr. 46). She was able to remain seated in a provided chair to complete this job. (Tr. 46-47). She also had a job working as a personal shopper in a grocery store but had to quit because she required a lot of assistance in lifting heavy objects while in this role. (Tr. 47).

She described being unable to work due to the undiagnosed issues with her left hand, that she requires a lot of shifting between sitting and standing, and that she cannot find a job that allows her to sit. (*Id.*). She also had issues with memory gaps and was unable to remember tasks for her work. (*Id.*).

She was seeing a psychiatrist for memory loss, PTSD, night terrors, anxiety, and depression. (Tr. 48). She was also treating with a primary care doctor for asthma, diabetes, back problems, and left-hand problems. (*Id.*). She had previously treated with a chiropractor for her back. (Tr. 49). She takes medication for her diabetes, anxiety and depression, asthma, and high cholesterol. (*Id.*). Side effects from these medications include migraines and nausea. (*Id.*).

She testified that she can lift up to five pounds with her right hand; any more than that and she has shooting pains in her back down to her feet. (Tr. 50). She can stand for five or ten minutes before needing to sit and can walk for between five and ten minutes before she feels at risk of falling. (*Id.*). Sitting is uncomfortable for her; she has to find an angled position to ease stress on her spine. (*Id.*). She does not use an assistive device, but she does lean on anything she can use. (*Id.*). She cannot reach overhead, but she can reach forward to grab objects directly in front of her. (Tr. 51). She can only go up and down stairs slowly and described having anxiety

5

and a phobia of stairs. (*Id.*). She cannot get down on her knees and she cannot crawl. (*Id.*). She has anxiety in social situations, and she has difficulty remembering things due to nerves. (Tr. 51-52).

The VE then testified. She identified Anderson's past work as Cashier II, DOT 211.462-010, SVP 2, light per the DOT and as performed. (Tr. 55). The ALJ presented the following hypothetical: A person at the light exertional level, who can occasionally climb ramps and stairs, but no ladders, ropes, or scaffolding. They can occasionally balance, stoop, kneel, crouch, crawl, frequently handle, finger, and feel. They would not be exposed to unprotected heights, hazardous machinery. They would not operate motor vehicles. They would perform simple, routine tasks with simple, short instructions, make simple decisions, have occasional workplace changes, but no strict production rate or hourly quotas, and only occasional interaction with co-workers, supervisors, and the public. (Tr. 56). The VE testified that Anderson's past work would be ruled out, due to social interactions in the workplace. (*Id.*). However, the VE identified other light work for this hypothetical individual, for example, mail clerk, DOT 209.687-026, SVP 2, with 37,000 jobs in the national economy; routing clerk, DOT 222.687-022, SVP 2, with 52,000 jobs in the national economy; and inspector/hand packager, DOT 559.687-074, SVP 2, with 105,000 jobs in the national economy. (Tr. 57).

The ALJ then presented a second hypothetical: A person at the sedentary exertional level, who could use a sit/stand option every 30 minutes, lasting for one minute and where they do not have to leave the workstation. They could occasionally climb ramps and stairs, but no ladders, ropes, or scaffolding. They could occasionally balance, stoop, and crouch, but are not kneeling or crawling. They can, with their left upper extremity, occasionally handle, finger, and feel. They can frequently handle, finger, and feel with their right upper extremity. They would not be

exposed to concentrated levels of pulmonary irritants, such as fumes, dust, odors, gasses, chemicals. No extreme temperatures. No unprotected heights, hazardous machinery, or operating motor vehicles. They can perform simple, routine tasks, with simple, short instructions, making simple decisions with occasional workplace changes. No strict production rates, or hourly quotas, and occasional interaction with co-workers, supervisors, and the public. (Tr. 57-58). The VE testified that no work would be available due to social interaction, and working at a production pace, and furthermore, that no sedentary work would be available due to the upper extremity limitations. (Tr. 58). The ALJ clarified, and the VE agreed, that a limitation to frequent handling, fingering, and feeling bilaterally would permit sedentary work, but if one arm were limited to only occasional, no work would be available. (Tr. 58, 60).

The VE also testified that if would be work preclusive if a person needs extra breaks throughout the workday, including three additional unscheduled breaks of ten minutes each, because the typical tolerance for time off task is 10% of the workday or less. (Tr. 58-59). A typical tolerance for workplace absenteeism is between eight and ten absences per year, including when an individual needs to come to work late or leave early. (Tr. 61).

**IV.    The ALJ's Decision**

On April 5, 2023, the ALJ issued the following unfavorable decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since January 1, 2020, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: diabetes mellitus, degenerative joint disease of the left wrist/hand, left trigger thumb, degenerative disc disease of the thoracic spine, lumbar spondylosis, obesity, post-traumatic stress disorder, major depressive disorder, and neurocognitive disorder (20 CFR 404.1520(c) and 416.920(c)).

7

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional climbing of ramps/stairs; no climbing of ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently handle, finger, and feel; no exposure to unprotected heights, hazardous machinery, or operate a motor vehicle; performing simple routine tasks, with simple short instructions, making simple decisions, occasional workplace changes, no strict production rate or hourly quotas, and only occasional interaction with coworkers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 5, 1974 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-34).

## V. Law & Analysis

### A. Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

8

1. whether the claimant is engaged in substantial gainful activity;

2. if not, whether the claimant has a severe impairment or combination of impairments;

3. if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4. if not, whether the claimant can perform their past relevant work in light of his RFC; and

5. if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v)[3]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

B.     **Standard of Review**

This Court reviews the Commissioner's final decision to determine if it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the

---

[3] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.* Generally, these regulations are duplicates and establish the same analytical framework. For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

9

conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007).

VI.  Discussion

Anderson brings one issue for review: whether the ALJ's evaluation of Dr. Konieczny's memory limitations related to her major neurocognitive disorder was supported by substantial evidence. (ECF Doc. 8, pp. 8-14). She argues that the ALJ's RFC determination does not accommodate her cognitive needs as a result of this error. (*Id.* at p. 9). Anderson points out that, in Dr. Konieczny's opinion, she "would have periodic difficulties in maintaining focus and persistence on even simple multi-step tasks," as supported by the Wechsler Memory Scale IV he administered during the consultative examination. (*Id.*, quoting Tr. 712). She takes issue with the ALJ's discounting of this opinion and states that the reasons given by the ALJ do not comport with the information available in the record. (*See id.* at pp. 10-14). Namely, she argues her neurocognitive disorder diagnosis indicates she has significant cognitive decline that interferes with her independence in everyday activities. (*Id.*). She further states that the lack of distant medical records to substantiate the fall causing her memory loss is an insufficient reason to deny disability where records by Dr. Konieczny and other providers support her memory loss. (*Id.*).

The Commissioner argues that Dr. Konieczny did not provide an opinion on Anderson's memory limitations. (ECF Doc. 10, pp. 4-5). In the Commissioner's view, Dr. Konieczny's opinion that Anderson "would have periodic difficulties in maintaining focus and persistence on even simple multi-step tasks" was not related to any memory limitations, but simply related to his evaluation of Anderson's ability to maintain attention, concentration, and persistence in completing single and multi-step tasks. (*Id.* at pp. 5-6). I find the Commissioner's argument in this respect to be unpersuasive and give it no credence.

However, I find the Commissioner's secondary argument – that Anderson has not met her burden to prove that her impairment is more limited than the ALJ's determination – persuasive.

11

(*See id.* at pp. 6-7). For the reasons that follow, I find the ALJ's consideration of Dr. Konieczny's opinion is supported by substantial evidence and recommend the District Court affirm the final decision of the Commissioner.

Social Security regulations amended on January 18, 2017 provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).

Before proceeding to Step Four of the sequential analysis laid out in the regulations, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how [she] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how she considered the supportability and consistency of a source's medical opinion, but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Consistency concerns the degree to which the opinion reflects the same limitations described in evidence from other sources, whereas supportability concerns the relevancy of objective medical evidence and degree of explanation given by the medical source to support the limitations assessed in the opinion. *See* 20 C.F.R. § 404.1520c(c)(1)-(2). According to Social Security regulations, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support their opinion, the more persuasive the medical opinion will be. *See id.*

12

Here, the ALJ provided the following analysis of Dr. Konieczny's opinion:

On February 2, 2022, the claimant attended a psychological consultative examination conducted by J. Joseph Konieczny, PhD. When queried as to her current disability, the claimant stated, "I have bad nerves and problems remembering things." The claimant reported that she was depressed and had a lot of anxiety. The claimant had no significant behavioral health history and she was not taking any psychiatric medication. On examination, the claimant's grooming and hygiene appeared to be adequate. Although pleasant and cooperative, she was occasionally vague in her presentation. Nonetheless, she responded to all questions and tasks posed to her. Her level of motivation and participation throughout the evaluation seemed adequate. She spoke reasonably well with no looseness of associations or tangentiality evident in her conversation. Overall, she seemed quite capable of expressing herself in a clear and coherent manner. In terms of sensorium and cognitive functioning, the claimant was oriented for person, place, and time; her ability to concentrate and to attend to tasks showed no indications of impairment; she performed a serial three subtraction without error; she recalled one of three objects after a period of five minutes had elapsed; her recall for digits was in the superior range, encompassing nine digits forward and four digits backwards; and she showed no deficits in her ability to perform logical abstract reasoning. Her insight into her current situation seemed fair. She showed no deficits in her awareness of rules of social judgment and conformity, but she showed some deficits in her overall level of judgment. IQ testing revealed a full-scale IQ of 91, placing her in the average range of adult intellectual functioning. Dr. Konieczny also administered the Wechsler Memory Scale IV which showed significant memory deficits. Dr. Konieczny noted that although there was no psychometric data regarding premorbid levels of functioning, given her apparent educational and vocational history, it would appear that the claimant suffered from fairly significant and global memory decline that was likely a residual effect of her traumatic brain injury she suffered from a work accident in 2005. Dr. Konieczny diagnosed panic disorder, other specified depressive disorder, other specified trauma disorder, and major neurocognitive disorder due to a history of traumatic brain injury, mild.

Regarding the four work-related mental abilities, Dr. Konieczny expressed the following medical opinion: (1) as a result of her neurocognitive impairment, the claimant would have limitations in the ability to understand, remember, and carry out instructions; (2) as a result of her neurocognitive impairment and mood symptoms, the claimant would have periodic difficulties in maintaining focus and persistence on even simple multi-step tasks; (3) as a result of her neurocognitive impairment and mood symptoms, the claimant would have diminished tolerance for frustration and diminished coping skills which would impact her ability to respond to typical supervision and interpersonal situations in the work setting; and (4) as a result of her neurocognitive impairment and mood symptoms, the claimant would have diminished tolerance for frustration and diminished coping skills which would impact her ability to respond to typical pressure situations in the work setting.

13

> Dr. Konieczny's medical opinion is not persuasive because it is not supported with collateral objective evidence of a "traumatic brain injury." The claimant's treating sources do not mention a history of brain injury/traumatic brain injury although the claimant's medical evidence of record indicates a past medical history of work-related "back pain" in 2006. Dr. Konieczny's medical opinion is not persuasive because it is not consistent with his diagnosis of "mild" major neurocognitive disorder. Dr. Konieczny's medical opinion is not persuasive because although it is somewhat supported by his memory testing of the claimant, it is not well supported by his mental status examination of the claimant or his IQ testing of the claimant.

(Tr. 28-29 (internal citations to the record omitted)). I find no reversible error in the ALJ's analysis of Dr. Konieczny's opinion. A plain reading of the decision reveals that the ALJ analyzed the opinion according to Social Security regulations and described the reasons she found it unpersuasive in terms of supportability and consistency. She determined it unpersuasive because Dr. Konieczny's opinion was inconsistent with his diagnosis where he determined Anderson's major neurocognitive disorder was mild. (*See id.*). And the ALJ considered evidence contrary to her persuasiveness determination by stating Dr. Konieczny's opinion was "somewhat supported" by his memory testing. (*Id.*). The ALJ further explains her RFC determination by stating "the mental status examination of the claimant by Dr. Konieczny contains some abnormal findings and the mental status examination of the claimant by Dr. El-Sayegh contains minimal abnormal findings. Significantly, no medical provider documented any abnormal mental status findings, and the claimant did not complain to her medical providers about poor memory." (Tr. 31). Nonetheless, the ALJ failed to find support in the mental status examination or in the IQ testing Dr. Konieczny performed. (Tr. 29). For these reasons, among others, the ALJ found that Anderson's mental status examinations and course of treatment were not consistent with disability and crafted an RFC consistent with her evaluation of Anderson's impairments. (Tr. 31). In all, the ALJ's determination comports with the regulations and is sufficient to meet the substantial evidence standard.

14

Furthermore, I determine that Anderson has not met her burden to demonstrate the resulting RFC does not accommodate her impairments.

The RFC is an assessment of a claimant's ability to work despite his impairments. *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011), citing 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."). Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(a); *see also* SSR 96-8p. Although these are not adversarial proceedings, *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019), and the ALJ serves as a neutral factfinder, *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000), it is not incumbent on the ALJ to advance the claimant's case. *Richardson v. Perales*, 402 U.S. 389, 410 (1971). Therefore, "while the ALJ must ensure that every claimant receives a full and fair hearing, the ultimate burden of proving entitlement to benefits lies with the claimant." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022), *cert. denied sub nom. Moats v. Kijakazi*, 143 S. Ct. 785 (2023) (internal citations and marks omitted).

Anderson has not met this burden. Although she raises error with the RFC resulting from the ALJ's assessment of the persuasiveness of Dr. Konieczny's opinion, she does not demonstrate how the RFC does not accommodate her mental and cognitive impairments. I note that throughout her brief, Anderson describes the significant effects of neurocognitive impairment generally, but does not provide evidence demonstrating its effects as it applies in her case. (*See, e.g.*, ECF Doc. 8, p. 9 ("A major neurocognitive disorder, even in its mildest form, means Plaintiff has significant, as opposed to modest, cognitive decline[.]"); *id.* at p. 10 ("Because cognitive deficits from major neurocognitive disorder interfere with independence in everyday activities, the ALJ's conclusion that Dr. Konieczny's opinion is not persuasive based

15

on this diagnosis is illogical.")). These generalized statements are insufficient to carry her burden. In contrast, the evidence Anderson does provide in support of a more limited RFC is the opinion evidence by Dr. Konieczny. (*See* ECF Doc. 8, pp. 6-12; ECF Doc. 11). However, the ALJ already discussed this evidence at length and found it unpersuasive. For this Court to determine otherwise would amount to a reweighing of evidence, which it may not do.

I therefore recommend the District Court affirm.

## VII. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Anderson's applications for DIB and SSI be affirmed.

Dated: November 15, 2024

Reuben J. Sheperd
United States Magistrate Judge

---

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be

specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).